The next case is International Union UAW v. Goodrich Pump. Thank you. Good morning. Good morning, Your Honors. My name is John Serretta for Appellant Goodrich Pump and Engine Control Systems. Arbitration under a collective bargaining agreement is fundamentally a matter of contract and the party's intentions, and so whether a particular dispute has been submitted to arbitration should turn on ordinary contract interpretation principles. How many plan administrators are there? Is there a plan administrator for the Triumph plan? There is a plan administrator for the Goodrich plan? There is. There is a committee. There's two plan . . . I'm going to wait for the deference of the chair. Yeah, I think Mr. Kavanaugh is going to help him out. Okay. There's one for you for the Goodrich plan and one for the Triumph plan? That is correct. Then how are we to know who one should ask? Which plan administrator should one ask for their benefits? Yeah. So as I understand the claims by the 26 employees in this case, they are seeking benefits solely from the Goodrich plan, and so I don't think in this particular case there's any confusion about from whom they should seek benefits. I think the claims here are that they would like to get an extra early retirement benefit reduced . . . They have an understanding of their rights under the collective bargaining agreement with regard to seniority and other things, don't they? That's part of their claim, certainly, and . . . Does the plan documents have the ability to alter the collective bargaining agreement? The plan documents, no. They do not purport to alter the collective bargaining agreement, but here's what they do. But the representative of Goodrich, when these letters were submitted, took the position that Goodrich's obligations under the plan were frozen at the time of the transaction, didn't he? Certainly, he said that, but . . . But is that his plan administrator's determination to make? Ultimately, that's the plan administrator's determination. Why did he answer? Well . . . Why wouldn't he say you should submit these to the plan administrator and he'll determine what your benefits are? He did, Your Honor, in that letter and in subsequent letters. If the plan administrator disagreed with him, would . . . are you telling us that Goodrich would adhere to the plan administrator's determination of what their benefits are under the agreement? Absolutely, Your Honor. If that included factoring in seniority and other aspects of the collective bargaining agreement and calculating what their plan benefits were, i.e., that the obligations continued after the sale of the plan in 2013? That's absolutely right. The merits of the dispute are not before the court. What is before the court is who should decide. And, under the plan, very specifically, as the district court pointed out, the power to determine the amount, the manner, and the timing of the payment of any benefits due is the plan administrator's. Isn't this dispute about whether Goodrich tried to modify the plan? This dispute is not about whether Goodrich tried to modify . . . If there were a dispute about modification, would that be subject to arbitration? As the district court pointed out, this court does have some precedents that indicate . . . If it were about plan modification, would that be subject to arbitration? If there were a claim that the CBA was violated by a plan modification, yes. Then, I think under this court's precedents, that would be a case within the arbitrator's power. Now, that is not what this case is. In the complaint, in the briefs, in the letters, which are in the joint appendix beginning at page 146 . . . The letters of the individual. The letters of the individual. They make clear that what they are seeking is enhanced early retirement pension benefits. Twenty-six individual claims of pension benefits. And if you just follow the district court's analysis, look at the Article 17 of the CBA, which describes the pension plan, makes clear reference to it, even has the serial number of the plan. It's a clear reference. It is unmistakable the document that is being referred to. And, it works no surprise at all to hold that that is, under normal principles of contract interpretation, incorporated into the CBA. My problem is, I really have a hard time . . . I still have a hard time getting my hand around . . . Some of this is, I think, problematic of the briefs. You both focused so much on the fact that the inclusiveness of the arbitration clause versus . . . and the exception of the plan administrator's . . . the reference of it into the CBA, but the exclusive right of the plan administrator to determine these things. What is it . . . what is your view of exactly what their claim is? You just used the term, enhanced retirement benefits. Yeah. These twenty-six employees were all under the age of 55 at the time of the sale in 2013, right? Correct. After they've achieved the age of 55, or they're over the age of 55, such that under the Goodridge plan, they would be entitled to early retirement with a different set-off than if they'd retired before they were 55, they file a request for a determination of what their benefits are, or an indication that they feel that they're entitled to early retirement benefits at . . . having your understanding of what they're saying? That's my understanding, yes. And is it also your understanding that their claim is, in essence, that notwithstanding the fact that the plant was sold, that the CBA remained in effect, and that, therefore, their membership and their time along the timeline of their association with the Goodridge plan continued, so that once they did reach the age of 55, they were no longer . . . their as early retirees having achieved the age of 55? My understanding of their claim is that they do not view themselves as having been terminated from employment under the plan. Rather, they are making an argument that some combination of the plan terms, or perhaps certain language in the CBA, should mean that notwithstanding the separation from employment, notwithstanding the fact that their employment terminated before they turned 55, they should still get the early retirement benefit as if they had continued to work for Goodridge after the age of 55. As if the contract stayed in effect, is what they're . . . as if their contract with Goodridge was not interrupted by the sale. That's their view, correct? Well, their view is that the CBA remained in effect. That's one thing. I think it's a separate matter as to whether their employment terminated at that time. Separation from employment ends the accrual of the early retirement benefit. You have to be working for Goodridge under the plan, and we would submit under the CBA. The way that Goodridge put it was, we're going to freeze your age as of the date of the sale in 2013. Is that more or less correct? Well, I think . . . So that you don't get the full . . . Yes. You get a reduced amount based on this deduction formula. No, I don't think that that's an accurate characterization of it. I think what they were saying was, look, as of this date, you'll be separated from Goodridge and you'll be put onto the Triumph plan and you'll continue to accrue benefits. You'll have no net detriment because you'll be kicked in under the Triumph plan as of the date of the new employment. You'll have all of your benefits from your time with Goodridge. But I think it's very important not to get too in the weeds on the merits issues. Because these issues on the merits . . . When someone tells me not to get into the weeds on the merits issue, I get into the weeds because I have a little concern. Sure. Well, just . . . The question is . . . All I meant to say by that, Your Honor, is this is a question of arbitrability that should not presuppose an answer on the merits. I mean, you have to understand what their claim is. I think . . . You have to understand what their claim is, whether it's a meritorious claim or not is one thing. But you still have to understand the nature of their claim and as to whether that's . . . they're just asking for what their benefits are or as opposed to . . . as opposed to . . . they think that you've taken a wrong interpretation of what the . . . of the viability . . . of the continuity of the collective bargaining agreement and its effect upon their retirement benefits. As we read this CBA and with the plan incorporated into it, the fundamental question is are they seeking a determination of the amount, the manner, and the timing of the payment of pension benefits too? They are. Now, that may well . . . Why isn't the answer as simple . . . and I'm not suggesting it is, but why isn't it as simple as, well, the CBA incorporates the entirety of the plan, is that correct? And so, whenever you try to interpret the plan, you necessarily also interpret the CBA. The CBA . . . any interpretation . . . anything involving interpretation of the CBA is subject to arbitration. Here's why I don't think that's right, because as you say, the entire plan has been incorporated. So functionally, we're talking about one unitary agreement. And the question, under these very detailed dispute resolution procedures, is clearly vested in the administrator to determine the amount of pension benefits due. And in doing that, they're going to have to look at this contract. We think they're going to have to look very closely at the very detailed early retirement provisions in the incorporated plan. My brother is going to say, well, you also have to look at certain provisions in the statute, too. You have to determine how they should be read together in order to determine the amount of pension benefits these workers are due. And perhaps, on the merits, that determination can be made. Is it usual that CBAs . . . I mean, I'm somewhat familiar, but not completely familiar with CBAs . . . that they incorporate pension benefit plans wholesale? Well, we see it in a number of cases, and we've cited them in our briefs. The Anheuser-Busch case, a wholesale incorporation. We cited a Seventh Circuit case, a number of other Sixth and Fifth Circuit cases. Does happen with some frequency. There's a lot of case law on it. And they generally hold that when you have it incorporated into the agreement, that is an explicit exception to a general provision for arbitration. I see my time has expired. But you've reserved two minutes for rebuttal. Thank you. Let's hear from the union. Thank you. Thomas Mickeljohn for the UAW. I agree with the initial point that counsel made. This is just a simple question of contract interpretation. And I actually think, at its heart, it is a very simple question. The question of which dispute resolution mechanism applies turns on, first and foremost, the language of the documents. And if it's a dispute that involves an interpretation of the pension plan, which most pension calculations may be, then the pension plan says that that issue is to be resolved according to this administrative process. Let me ask you, your opponent said that to be able to take the early retirement at 55, you have to be employed by Goodrich or UTC, whatever. Do you agree with that? I don't agree with that. But that is an issue. No, he said that the pension plan says that. Let me be specific. You've looked at the pension plan. It's incorporated into the collective bargaining agreement. Is that what the pension plan says? I think the pension plan is ambiguous on that point. However, I don't think this dispute turns on... Now let me ask you that. I wasn't meaning to... Paul, stop. Let me stop and let me ask you a question. You can't tell what the question is until you hear it. So if it's ambiguous, I'll take your answer, it's ambiguous, who has the right to determine the ambiguity? The plan administrator? Absolutely. I'm sorry, that is not the issue in this case. Well, it is for me right now because I can't understand what your claim is. And so I take it that your claim is that these people who were not 55 when the plan was sold somehow continue to be employed by or have some form of status that allows them to continue to accrue benefits under the CBA, notwithstanding they're not being good rich employees, and that therefore when they do reach 55, they are entitled to early retirement benefits under the plan. Is that your position? No. Our contention is that the collective bargaining agreement says that the reduction factor for between the ages of 55 and 61 and early retirement will be unreduced between ages 62 and 65. This turns on the definition of retirement under the collective bargaining agreement, which is influenced or which is affected by seniority under the collective bargaining agreement. But this issue turns on the meaning of Article 17, Section 1.2 of the collective bargaining agreement, Appendix A, 25 and 26, where the mandate for an early retirement benefit is spelled out in the collective bargaining agreement. So if I could go back to your earlier question about the meaning of the pension plan. I would submit that it is irrelevant what the pension plan says on this issue. Counsel contends that the pension plan is consistent with this language. We would contend that it depends on how that language is interpreted. If the language is interpreted to be inconsistent, the language of the pension plan is interpreted to be inconsistent with the language of the collective bargaining agreement, then whether you call this a modification or a failure, some other inconsistency or failure to follow the collective bargaining agreement, the pension plan would not be in compliance with the mandates of the collective bargaining agreement. And that is an issue that is vested with the arbitrators to determine. The collective bargaining agreement says, in essence, that disputes under the collective bargaining agreement Well, I'm familiar with all that language. I'm certain my colleagues are, too. The pension plan says that disputes under the pension plan are resolved Does the pension plan define or further describe what a retirement means? Does it define what retirement means? I don't believe it contains an actual definition of retirement, no, Your Honor. So the only description or definition is in Article 17 of the CBA? That doesn't sound right, but okay. There's a retirement process which requires submitting paperwork. But I do not believe there is anything in the pension plan that says that one retires that says either way whether retirement requires leaving one job or starting another job or being terminated. It is true that these individuals continued their employment with triumph when the plant was sold. But as your question pointed out, there is nothing in either the pension plan or the collective bargaining agreement or any agreement entered into by the union saying that benefits froze at that point. Where does that language come from? The letter that the company wrote back to the union or to the individual 26 employees in response to their initial inquiry about their benefits. So it was a unilateral statement on the part of Goodrich? Yes. Which wasn't accepted or ratified in any way by the union workers. It was challenged by the union. At that point, the union's representative expressed an interest in pursuing a grievance to determine whether that interpretation of the pension plan or of the series of transactions is consistent with or inconsistent with the collective bargaining agreement. And today we're faced with the question of whether arbitration under the CBA prevails over any dispute mechanism in the pension plan. Isn't that the issue before us? Well, I think I would frame it the opposite way and say whether the fact that the pension plan is incorporated into the collective bargaining agreement displaces the dispute resolution mechanism of the collective bargaining agreement. But I know this— Is there a circumstance given—I'm having a little trouble just analytically because this is a wholesale incorporation of a pension plan into a CBA, and I take it, but I think maybe I'm wrong, that you're suggesting that any interpretation of the plan also requires an interpretation of the CBA. Is that going too far? I think that's going too far. I'm saying that an interpretation— I'm saying the question is what is the issue being raised by the union or the employees. If they are raising an issue about a specific provision of the collective bargaining agreement, which is what the union has sought to raise here, then it's to be resolved under the collective bargaining agreement. Basic principles of contract interpretation, and I know you feel that this is— The 26 documents that were filed by the 26 employees asked for certain pension benefits associated with their age. Correct. So that's a request for pension benefits. That's a claim for pension benefits. And are you saying that those are subject to arbitration or subject to the pension dispute mechanism? I'm saying they're subject to arbitration because the question to be resolved requires interpretation of a particular provision of the collective bargaining agreement. But I'm looking at Article 17, and I don't see that it defines or further describes retirement. That's A25, A something. I would point to the Schweitzer case, which I think is the one that's most closely on point. In that case, the dispute was how fractional years of service were to be credited under the pension plan and under the collective bargaining agreement. The collective bargaining agreement mandated that the employees receive so many credited years of benefits or so many dollars' worth of benefits per year of service. And the contention was that by interpreting that language in a certain way in the collective bargaining agreement, that the pension plan was inconsistent with the collective bargaining agreement. Here, our contention is that if the employees are not treated as retiring when they submit their retirement papers, that the pension plan's interpretation is inconsistent with the collective bargaining agreement. And I know I'm over. You are over? In closing? I would close, yes, with this observation, that I believe that the questions being asked by the court go very, very close, if not over the line, into an issue of the merits of what these employees are entitled to receive. We have raised a question under a specific provision of the collective bargaining agreement. There is nothing in the pension plan that gives the pension administrators the authority to decide issues arising under the collective bargaining agreement. Thank you, counsel. Mr. Cerretta, you have reserved two minutes for rebuttal. Thank you, Your Honors. Just briefly, because I do think that this has been clarifying. My brother counsel said, look, our claim is under Article 17, early retirement pension, full stop. It's a CBA issue. But hold on a second. The pension plan has been incorporated by reference into the CBA. So in order to determine what early retirement means in Article 17, I think that whoever decides the merits of this is going to have to go to A137, to capital H, which is a provision of the plan, the Chandler Evans section of the plan. Early retirement pension, which defines early retirement pension, says what it is, says it's for employees who had a termination of employment after they reached their 55th birthday. Isn't this a question for the arbitrator if we decide that arbitration is required? It would be if you decided that, yes. But here's why you shouldn't decide it's for the arbitrator. Article 17 also incorporates that plan by reference. That plan is very specific in saying that all determinations of the amount, the manner, the timing of the payment of pension benefits from the plan have to be determined by the administrator. So clearly we have 26 claims for benefits under the plan, and clearly that's going to involve some interpretation of this pension plan. Now, I grant you, my brother counsel has said, well, I'm going to raise some issues about the CBA and how they relate to the provisions of the plan. But from the beginning of that analysis to the end of that analysis, it's going to be a determination of the amount, the manner, and the timing of the payment of pension benefits from the plan. I just wanted to end briefly with the Schweitzer case, which was mentioned by my brother counsel. The Schweitzer case, I think when the court looks at it, and also some of the other Second Circuit precedents that were raised in the briefs, as the district court recognized, those cases are not directly on point because in none of those cases did the court confront the question that is faced with here, which is what do you do with an incorporation by reference of a pension plan? No incorporation by reference issue addressed in Schweitzer. Where it was addressed is by the Sixth Circuit in the Anheuser-Busch case, and we think that's a persuasive analysis, and we would ask the court to apply it here. Thank you very much. Thank you. Thank you both very much. We'll reserve decision. The next items on our calendar are on submission, so I'll ask the clerk to adjourn court. Court is adjourned.